(55 Misc. Rep. 481.)

In re HAUG.

(Surrogate's Court, Kings County. July, 1907.)

EXECUTORS—SALE OF ASSETS—PURCHASE IN EXECUTOR'S INTEREST—SETTLEMENT.
　　Testator owned 45 shares of stock in a corporation, which, with other stock held by the executor and a partner of the latter, would give the executor absolute control of a majority of the stock. The executor, in order to obtain the stock of the estate, sold it with an evident intention to prevent interested parties from getting it and to obtain it for his own benefit. *Held*, that, such interested parties having elected to treat the transaction as a sale, the executor will be surcharged with the fair value of the stock, to be determined by evidence as to what persons were willing to pay for it; it not being generally dealt in.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 467, 640.]

In the matter of the accounting of Charles F. Haug, executor of Ernest Von Au, deceased. Judgment rendered.

Morris & Whitehouse, for executor.
Fisher & Voltz (Alfred E. Sander, of counsel), for contestant.
Ashbel B. Fitch and Mott & Grant, for Trust Co. of America.
George Freifeld, for Lizzie Bohnet.
J. Harry Snook, designated to receive citation.

CHURCH, S. There are several proceedings in this estate which the parties have agreed by stipulation should be heard as one proceeding, in consequence of the fact that all the circumstances giving rise to these various applications turn upon the executor's conduct in a single transaction. The facts briefly are as follows:

The executor owned in his individual capacity a number of shares of stock in a corporation organized for the purpose of manufacturing candy. One Magenheimer, who stood practically in the relation of copartner, owned a like number of shares. The decedent owned 45 shares, which became a part of his estate to be properly handled by the executor. The ownership of these 45 shares, added to the holdings of the executor, would have given him more than 51 per cent. interest in the stock of the company, and therefore absolute control. It is apparent that there was a desire, both upon the part of the executor and of the other holder of the stock, to obtain the possession of these 45 shares; and the persons interested in the making of this motion, having knowledge of this fact, wished to know when such stock should be exposed for sale, so that they could attend and bid up the shares.

It is perfectly manifest, therefore, that, if there had been a general competition in relation to this stock, it would naturally have been the subject of spirited and active bidding. The stock was sold by the executor under circumstances which exhibited a deliberate intention upon his part to prevent others from bidding upon the same; and it is even alleged very strongly that as a matter of fact the stock was bought for the executor's own use. It is unnecessary to review the entire circumstances surrounding this sale or the conduct of the executor in this connection, as they are both so bald and forcible that they speak for themselves. The executor himself admitted, when asked why he did

not notify the other persons who would be likely to bid, that "he did not care" to have them bidding on the property. It was a case where, unfortunately, the duty of the executor to his trust conflicted with his self-interest, and, rather than sustain an injury to himself, he sacrificed the welfare of his ward. Counsel for the moving party herein has elected to treat the transaction as a consummated sale, upon the executor being surcharged with what he regards to be a proper sum for the value of the stock; and this obviates the necessity of determining whether or not such stock was actually bought on behalf of the executor.

As the stock of this company was not dealt in generally, it is impossible to use any of the ordinary methods by which the stock of a corporation is valued; nor does a general examination of the condition of the company alone serve to fix the value of the stock, as it is apparent it was worth very much more than the aliquot proportion of the company which it represented, by virtue of the fact that its owner-ship would enable the executor, if he purchased the same, to control the corporation. It appears from the evidence that persons had stated they were willing to pay as high as $250 per share for this stock; and this, therefore, would be a fair sum to take as its value. If this value imposes any hardship on the executor, he must appreciate that the difficulty of determining the exact worth of the stock has been created by himself, and that, therefore, he is in the position of a man who has created a "confusion of goods," and should not be allowed to plead his own wrong in mitigation of the damages to be assessed against him.

The executor should therefore be surcharged with the difference of $150 per share on the 45 shares of stock as contained in the original accounting, and the decree settling such account should be amended accordingly. The provision awarding the executor costs and commissions in such decree should also be stricken out. The final account presented here for settlement should be approved, and the executor allowed his costs and commissions upon the same, except that he should not be allowed commissions upon the amount with which he is surcharged in the previous accounting. As the decree settling the final account will be the last act of the executor's official existence, it is unnecessary to pass upon the papers asking for his removal.

Decreed accordingly.